FRANK RAMSEY, APPELLANT, v. COUNTY OF GAGE IN THE STATE OF NEBRASKA, APPELLEE.

43 N. W. 2d 593

Filed July 6, 1950. No. 32801.

*Shrout, Brown & Thurmond,* and *Chambers, Holland & Groth,* for appellant.

*Clarence S. Beck,* Attorney General, *William T. Gleeson,* and *William B. Rist,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an appeal from a judgment of the district court for Gage County denying the plaintiff's claim for salary and per diem as a county supervisor filed in accordance with section 33-128, R. S. Supp., 1949, and allowing the claim for salary and per diem as a county supervisor as provided for in section 33-128, R. S. Supp., 1947.

Where reference is made to the Constitution of 1920 in this opinion, it refers to amendments adopted in 1920 to the Constitution of Nebraska of 1875.

The pleadings show the following facts admitted: The plaintiff, a duly elected and qualified member of the board of supervisors of Gage County, Nebraska, on August 31, 1949, filed with the supervisors of the county his claim for salary and per diem in the amount of $15.36. The claim was rejected. Appeal was perfected by the plaintiff to the district court.

Legislative Bill No. 461, enacted by the Sixty-first Session of the Legislature of the state and now appearing as section 33-128, R. S. Supp., 1949, was approved May 5, 1949, and became law August 27, 1949. The amended statute provides that: "Members of county boards shall each be allowed for the time they shall be necessarily employed in the performance of all the duties of that office the sum of seven dollars and fifty cents per day and six cents per mile to be paid out of the general fund of the county; * * *. The total maximum amount of per diem compensation, to be paid or drawn by any member of the board shall not exceed the following amounts per annum: (1) In counties under township organization having twenty-two thousand or more inhabitants and less than sixty thousand inhabitants, fourteen hundred twenty-five dollars; * * *."

Gage County comes within the purview of section 33-128, R. S. Supp., 1949.

The defendant's answer alleged that the plaintiff was entitled to compensation for his services in the sum of $5.00 a day, or the sum of $10.36 for services and mileage, performed by the plaintiff on the 30th and 31st days of August, 1949, as provided for by section 33-128, R. S. Supp., 1947, and specifically denied that the plaintiff was entitled to any additional compensation under section 33-128, R. S. Supp., 1949.

The plaintiff moved for a judgment on the pleadings. The trial court held that the following language appearing in Article III, section 19, of the 1920 Constitution of the State of Nebraska: "* * * nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof be increased or diminished during his term of office," barred the plaintiff from receiving the increased compensation provided for in section 33-128, R. S. Supp., 1949.

Upon the overruling of the plaintiff's motion for new trial the plaintiff appeals.

The appellant assigns as error the judgment of the trial court holding that Article III, section 19, of the Constitution of Nebraska, barred the appellant from receiving the increased compensation provided for in section 33-128, R. S. Supp., 1949, and that the judgment so entered was contrary to law. In support of this contention the appellant sets forth Article III, section 16, of the Constitution of Nebraska, 1875, as follows: "The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into. Nor shall the compensation of any public officer be increased or diminished during his term of office."

The appellant relies on the case of County of Douglas v. Timme, 32 Neb. 272, 49 N. W. 266. In the cited case the defendant in error was elected county commissioner of Douglas County. His salary was fixed by statute. Before his term of office expired the Legislature passed an act providing in counties having a population of over 70,000, that county commissioners would receive a salary of $1,800 a year. The defendant in error filed a claim before the county board for the increase in compensation. The claim was rejected. Appeal was had to the district court, and the district court rendered judgment in favor of the claimant. Douglas County, plaintiff in error, appealed. In the Supreme Court the plaintiff in error contended that the Legislature had no power to increase the salary of the defendant in error during his term in office, and based the contention on Article III, section 16, of the Constitution. In interpreting the cited section and article of the Constitution the court said: "That provision, in our view, applies alone to those officers whose offices were created by the constitution. As to all such officers, the salary or compensation fixed by law when the officer is elected and enters upon the duties of his office, can neither be increased in any form, nor diminished, during his term."

State ex rel. Gordon v. Moores, 61 Neb. 9, 84 N. W.

399, is cited. In this case a police judge of an incorporated city, a constitutional officer, brought an action in mandamus to compel the payment of the difference in salary under a charter passed by the Legislature reducing the salary while the incumbent was holding over his term pending the election of a successor. The court, in interpreting Article III, section 16, of the Constitution of 1875, said: "This provision of the fundamental law has been construed to apply alone to officers created by that instrument, and as to such officers their compensation or salary, as the same existed when the official term began, could be neither increased nor diminished during such term." County of Douglas v. Timme, *supra*, is cited in support thereof.

It is the contention of the appellant that the foregoing cited authorities disclose that this court, by judicial construction, has interpreted the words "any public officer" as the same appear in Article III, section 16, of the Constitution of 1875, as meaning any public constitutional officer; that the word "public" used in said section and article of the Constitution was of no particular significance for the reason that the Constitution was speaking about public officers. The appellant argues further that when the Constitutional Convention convened in 1920, it had before it the interpretation by this court of the words "any public officer" or "any officer."

In this connection, the appellant relies on the following rule: "It is an established rule of construction that, where a constitutional provision has received a settled judicial construction, and is afterward incorporated into a new or revised constitution, or amendment, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it." 16 C. J. S., Constitutional Law, § 35, p. 76. See, also, Bodie v. Pollock, 110 Neb. 844, 195 N. W. 457.

The Constitutional Convention which assembled in 1920 amended Article III, section 16, of the Constitution

of 1875. As amended the provision appears as Article III, section 19, of the Constitution of 1920, and reads as follows: "The Legislature shall never grant any extra compensation to any public officer, agent or servant after the services have been rendered nor to any contractor after the contract has been entered into, nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof be increased or diminished during his term of office." The words added by the amendment are: "including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof."

Appellant contends further that the added words by amendment, as the same appear in Article III, section 19, of the Constitution of 1920, do not extend the constitutional prohibition to public officers such as the appellant, but the prohibition extends, as previously determined by this court, to constitutional officers.

The rule of construction heretofore set out, contended for by the appellant, is not applicable when the Constitutional Convention of 1920 and the people, by the adoption of the revised amendment, now Article III, section 19, Constitution of 1920, not only changed the language but also the construction of the constitutional provision, as will hereinafter be pointed out.

It will be observed that the amendment to Article III, section 16, of the Constitution of 1875, now Article III, section 19, of the Constitution of 1920, was not a reenactment, but went further than simply reenacting Article III, section 16, of the Constitution of 1875.

A constitutional amendment becomes an integral part of the instrument and must be so construed. While the amendment to a section of a Constitution is an integral part of the Constitution, the original provision actually remains a part of the Constitution for purposes of construction. It is therefore possible to consider the original section as well as the amendment to determine the intent

of the people in adopting the amendment. See Swanson v. State, 132 Neb. 82, 271 N. W. 264.

Article III, section 19, together with all other amendments proposed by the Constitutional Convention of 1920, was submitted to the electors of our state on September 21, 1920, and legally adopted. It now stands as a part of the Constitution of our state and is as binding upon all sessions of the Legislature as upon the Governor of our state and on its courts. See State ex rel. Randall v. Hall, 125 Neb. 236, 249 N. W. 756.

A state Constitution is the supreme written will of the people of the state who have adopted it as a framework or basis of their government, subject only to the limitations to be found in the federal Constitution. See 16 C. J. S., Constitutional Law, § 70, p. 131.

"The purpose of section 19, art. III of the Constitution, was to establish and maintain the independence of the three branches of the government.

"Our system of government distributes the powers between three coordinate departments, the legislative, the executive, and the judicial. Each of these three independent departments derives its power directly from the people, and is responsible to them." State ex rel. Randall v. Hall, *supra*.

Such a provision is one of the oldest of the checks and balances provided in the federal Constitution and in the Constitutions of most, if not all, of the states. See State ex rel. Johnson v. Marsh, 149 Neb. 1, 29 N. W. 2d 799.

It is a maxim that the object of construction as applied to a written Constitution is to ultimately ascertain and give effect to the intent of the people. On the attitude or approach to interpretation, there is precedent. The words and terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests, that they have been used in a technical sense. The courts should accord to the language of the

Constitution the meaning which obviously would be accepted by a layman. No sentence, clause, or word should be rejected as meaningless or superfluous. See, Elmen v. Board of Equalization and Assessment, 120 Neb. 141, 231 N. W. 772; Mekota v. State Board of Equalization and Assessment, 146 Neb. 370, 19 N. W. 2d 633.

In discussing the question presented by this appeal, it is true the Constitutions of some states, by their very terms, specify explicitly the office to which the inhibition shall apply, by extending the scope to all public officers, thus negativing any contention that the inhibition does not extend beyond offices specifically created by the Constitution. The Constitutions of other states are less explicit in that, in providing for the inhibitions applicable to public officers, they fail to specify whether, within the designation of that phrase, officers whose authority does not spring from the terms of the Constitution itself may be included.

The courts which have specifically considered the question have reached the conclusion that constitutional provisions prohibiting change in the compensation of public officers are not confined in their application to offices directly created under the Constitution, but are applicable to all public offices, whether of legislative or of constitutional origin. See, Calvert County v. Monnett, 164 Md. 101, 164 A. 155, 86 A. L. R. 1258; Crawford v. Hunt, 41 Ariz. 229, 17 P. 2d 802.

It has been held in many cases decided by the Supreme Court of Pennsylvania that such an inhibition applies to officers holding offices created by the Legislature, as well as those created by the Constitution, and that no distinction should be made in applying the rule as between the two classes. Lancaster County v. Fulton, 128 Pa. 48, 18 A. 384, 5 L. R. A. 436; Richie v. Philadelphia, 225 Pa. 511, 74 A. 430, 26 L. R. A. N. S. 289; Tucker's Appeal, 271 Pa. 462, 114 A. 626; Com. ex rel. Wolfe v. Moffitt, 238 Pa. 255, 86 A. 75, Ann. Cas. 1914C 211.

We are impressed with the soundness of the authorities aforecited. The constitutional provision in question is plain and emphatic. The words used are apt and direct, constitute a material and significant change in the section, and construe themselves. It positively forbids increasing or diminishing the compensation of all officers, state and county, whose salaries are fixed by the Legislature. It was designed to protect the individual officer against legislative oppression and, further, to curb the activities of public officers in lobbying to induce the Legislature to increase salaries. By the amendment the people simply said that the Legislature shall not increase or diminish the compensation of any public officer during his term of office, and that this inhibition should include any, and therefore all, public officers whose compensation is fixed by the Legislature. It necessarily follows that the change made by amendment, Article III, section 19, of the Constitution of 1920, destroys the validity of such decisions as County of Douglas v. Timme, *supra*, as binding precedents, or as useful guides in the problem before the court.

In State ex rel. Johnson v. Marsh, *supra*, and Elmen v. State Board of Equalization and Assessment, *supra*, it is held that this court will take judicial notice of the proceedings of the Constitutional Convention. A resort to those proceedings is now had, not as an aid to interpretation, but to demonstrate and confirm that the people did broaden the coverage by amending Article III, section 16, of the Constitution of 1875, now Article III, section 19, Constitution of 1920, as stated in State ex rel. Randall v. Hall, *supra*.

The reports of committees, debates, and colloquies between members relative to the phraseology of the provisions of the Constitution are too voluminous to quote to any extent here. The proceedings of the Constitutional Convention of 1920 demonstrate beyond question that the intention of that assembly was to accomplish exactly what we have said the language does accomplish.

A careful reading and analysis of the constitutional debates, in connection with this change in the language of the Constitution and other related matters, clearly indicate that it was the intention of the convention to extend the constitutional prohibition against increasing or diminishing compensation during the terms of officers to include in the prohibition not only constitutional officers but all other officers whose salaries should thereafter be fixed by the Legislature. A few quotations from the proceedings of the convention will illustrate that such was the intention of the assembly.

In the first discussion of the proposed amendment, the delegate who introduced the proposal to amend Article III, section 16, of the Constitution of 1875, said: "In drawing this proposal it is proposed to make that same provision extend a little further than our courts have decided it extended and I see in that and this provision the same provision that is in the Constitution now, 'the same provision shall apply to all public officers including an officer whose compensation is fixed by the legislature.' In other words, it applies it to the county officers * * *." Proceedings of the Constitutional Convention, 1919-1920, p. 971.

Another delegate, a member of the Legislative Department Committee, stated: "The reason why this was added (which could only mean the new language appearing in the amendment, Article III, section 19, of the Constitution of 1920) was because the Supreme Court of our state had construed that provision of the Constitution as it now exists to apply only to those officers whose offices were created by the Constitution itself, and they also held that it did not apply to the officers created by the legislature. It was thought by the proposer of the bill that this constitutional provision should be extended to include all officers created by the legislature, * * *." Proceedings of the Constitutional Convention, 1919-1920, p. 974. This delegate said further: "Speaking for myself, at least, I consider that the Supreme Court of the

State having construed what was meant by 'public officers' in that provision as it existed, would adhere to that as applying to a Constitutional office, and we then thought it was advisable to extend the provision to include, as the language here is, 'all public officers including those whose compensation is fixed by the legislature.' And the 'all public officer' clause, referring to the Constitutional officers, as heretofore construed by the Supreme Court, then we add another clause, those whose compensation is fixed by the legislature. That was the idea I, as a member of the committee, had in mind, and the reason we had for that was to prevent lobbying of county officers in particular, and other officers, * * *." The same delegate later said: "It was intended when we passed Proposal No. 71 to reach constitutional officers and officers created by the legislature, as you will probably remember, * * *." Proceedings of the Constitutional Convention, 1919-1920, pp. 975, 1482.

The delegate who introduced the proposal in the first instance reiterated his former statements. Many statements of similar import may be found in the published report of the proceedings of the convention. They all tend to demonstrate that the entire convention understood the purpose of the amendment would be as we have herein indicated.

Another delegate stated to the convention as follows: "There is a very material change, and the latter part of it applies to an officer whose office is created by law or by the Legislature, whereas the old provision simply applied to offices contained within the Constitution." Proceedings of the Constitutional Convention, 1919-1920, p. 2198.

So much of the "Address to the People" as relates to this amendment reads as follows: "Amended Section 16, submitted as No. 10 on the ballot, extends the provision of the old section so that the Legislature shall never grant any extra compensation to any public officer, agent or servant after the services have been rendered,

nor to any contractor after the contract has been entered into, including any officer whose compensation is fixed by the Legislature. The purpose of this amendment is to prevent increase of the salary of a public official during his term of office and to prevent or discourage lobbying in favor of increase of salary." Proceedings of the Constitutional Convention, 1919-1920, p. 2842.

It is quite apparent from an examination of the Proceedings of the Constitutional Convention with reference to the subject matter here involved that the people did not only change the language of the provision of the Constitution in question but the construction as well.

The trial court was correct in the rendition of the judgment heretofore set out.

The appellant inquires, from what date shall the members of the county boards of supervisors or commissioners begin to receive the increase in salary provided by section 33-128, R. S. Supp., 1949?

Section 33-128.01, R. S. Supp., 1949, provides: "That section 33-128 shall be so interpreted as to effectuate its general purpose, in the public interest, to provide adequate compensation as therein provided for members of the county boards of county commissioners and supervisors, and to permit a change in such compensation as soon as same may become operative under the Constitution of Nebraska."

Section 33-128.01 may be logically interpreted as a saving clause to the effect that if it be held that the increase in salary could not be paid during the existing term of office, then section 33-128, R. S. Supp., 1949, would not be declared void but would become operative upon the beginning of the first future term of office of the officer affected by said section. See State ex rel. Johnson v. Marsh, *supra*.

Section 33-128.01, R. S. Supp., 1949, does not in any manner benefit appellant in his attempt to recover increase in compensation during his present term of office.

For the reasons given herein, the judgment of the district court is affirmed.

AFFIRMED.